IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PARAGON DEFENSE SOLUTIONS, INC., *ET AL.*, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) )   Case No. 1:24-cv-01241-AJT-IDD |
| PETE HEGSETH, *et al.*, | ) ) ) |
| *Defendants*. | ) ) |

**MEMORANDUM OPINION AND ORDER**

In this Administrative Procedure Act ("APA") challenge, Plaintiffs Paragon Defense Solutions, Inc. ("Paragon"), Weiwei Jian ("Jian"), SupplySync LLC ("SupplySync"), and Natallia Patashka ("Patashka") (collectively the "Plaintiffs") challenge their debarment from federal contracting by the United States Defense Logistics Agency ("DLA"). Before the Court are cross-motions for summary judgment, [Doc. Nos. 20, 21] (the "Motions"), which the Court took under advisement following a hearing on July 18, 2025. Upon consideration of the Motions, the memoranda and exhibits submitted in support thereof and in opposition thereto, the argument of counsel at the hearing, and for the reasons stated below, Plaintiffs' Motion is **DENIED**, and Defendants' Motion is **GRANTED**.

**I. BACKGROUND**

The following facts appear in the Administrative Record ("AR"), unless otherwise noted:

DLA is responsible for procuring items from manufacturers and suppliers and providing them to the Department of Defense ("DOD") and other government agencies. AR1. It manages over 10 million orders each year from over 332,000 contracts with suppliers and to manage the large volume of orders, DLA assigns over 9,000 contracts per day using an automated procurement

1

system. AR1-2. DLA stores the procured spare parts in warehouses until they are needed, after which, DLA inspects the items for any potential defects or other nonconformities with the contract specifications. *Id.*

Jian is Paragon's President and started contracting with DLA in December 2019, AR3, but the events at issue in this case span from approximately July 30, 2020 to March 26, 2024. During this time, Paragon received approximately $5.8 million from over 116 DLA contract awards, *id.*, and Pataska submitted 147 quotes on Paragon's behalf to be awarded the contracts. AR368. However, Paragon cancelled fifty of the already-awarded contracts, amounting to a 43% cancellation rate. *Id.* At an undetermined date thereafter, DLA tested numerous samples from Paragon's already-delivered parts and found that of the fourteen tested parts, ten were noncompliant with the contract (71%) either due to being unusable, or in some cases, being the wrong item altogether.[1] AR4. Four of the nonconforming orders also involved "critical application items," which referenced items that could injure personnel or disrupt a military mission if they failed. *Id.*

Following this review, on February 27, 2023, DLA issued Notices of Proposed Debarment ("NPD") to Jian and Paragon, through its Suspending and Debarring Official ("SDO") Jon L. Lightner, notifying them that they may be debarred "from Federal Government contracting and from directly or indirectly receiving the benefits of Federal assistance programs or from purchasing surplus government property under the Federal Property Management Regulation." AR13-20. As for the basis of the debarment, DLA cited Paragon's 43% cancellation rate and 71% nonconforming parts survey. AR3-4. From these statistics, DLA determined that "Paragon lacks the business integrity and present responsibility to be a government contractor," and Jian

---

[1] The NPD focuses on only six of these nonconforming orders. *See* AR4-7.

"participated in, knew of, or had reason to know of the company's seriously improper conduct" and should also be debarred in his personal capacity. AR10. Paragon and Jian were informed that they could oppose the proposed debarment. AR14.

On March 17, 2023, Patashka registered SupplySync LLC as a Virginia limited liability corporation and obtained all registrations required to participate in government contracting. AR367-68. Patashka is the Organizer, Registered Agent, and contact for SupplySync. AR368.

On March 28, 2023, Paragon and Jian, through counsel, submitted a written response to the NPDs. *See* AR251-60. The response admitted that Paragon and Jian's processes for managing its vendors and fulfilling orders "has been lacking and in need of improvements," but explained that they would adopt a "code of ethics that will include a compliance program" and "stand ready to cooperate with DLA to resolve all issues." AR252. Notably, Paragon did not dispute the nonconforming parts data or the high contract cancellation rate, but instead, explained that most of the cancellations were caused by Paragon's prior manufacturer being abruptly debarred, which led to a disruption in Paragon's orders. AR254. Similarly, Paragon explained that one supplier was responsible for supplying each of the nonconforming parts relied on in the NPD, and Paragon had already stopped working with that supplier. AR255. Furthermore, they stated that "Paragon and Mr. Jian take full responsibility for the cancelled orders and delivery of non-conforming products, and its previous inability to fully manage the business to the level Mr. Jian or DLA expected should be outweighed by Mr. Jian's sincere desire and strong ability to correct these issues and positively move forward in serving DLA and other government agencies." AR259.

On May 8, 2023, DLA debarred Paragon and Jian for three years, finding that the evidence showed by a preponderance of the evidence that they "lack present responsibility to be Government contractors." AR304. In support of its decision, DLA stated that "[Paragon and Jian] did not dispute

the facts in this case. Rather, they freely admit their high rate of order cancellations and supplying non-conforming goods," AR304, and although DLA recognized that Paragon and Jian proposed various remedial measures that they will take to improve their contract performance, the SDO found "these measures aspirational, tentative, and not concrete enough to protect the Government." AR305. In support of this finding, the SDO referenced that although Paragon and Jian discussed hiring an industry consultant to oversee their new quality control program, Jian could not remember the alleged new employee's name, and that Jian's latter submission of the individual's resume and emails demonstrated that the person was not yet hired. *Id.* The SDO also determined after considering the relevant ten factors listed in F.A.R § 9.406-1 that there was insufficient evidence to overcome the NPD, as many of the factors weighed against debarment, including the "aspirational" and "tentative" proposed remedial measures, which caused the SDO to "question whether the Respondents truly understand the seriousness of the misconduct giving rise to the cause for debarment." AR308.

On July 19, 2023, Paragon and Jian requested, through counsel, that their three-year debarment term be reduced. AR312-16. In the letter, they stated that they hired an industry consultant; implemented a supplier selection and monitoring process; adopted a written code of ethics and conduct; offered to pay restitution; implemented a vetting questionnaire; completed training; and adopted standard government subcontract terms and conditions, AR313-14, and submitted exhibits documenting the same. AR317-64.

On August 29, 2023, DLA issued NPDs to SupplySync and Patashka on the grounds that SupplySync was an "affiliate" of Paragon and Jian, finding that Jian "controls or has the power to control both SupplySync and Paragon," AR371, as demonstrated by (i) evidence that Patashka

submitted contract bids from the same IP address on behalf of both Paragons and SupplySync;[2] (ii) Patashka's telephone numbers are registered to Jian; (iii) Jian and Patashka reside at the same address; (iv) Patashka is a registered user for the DIBBS account[3] for both Paragon and SupplySync; and (v) the IP address used by Patashka geolocates to Sterling, Virginia, where Jian and Patashka reside. AR368. The SDO also proposed extending Paragon and Jian's debarments for three additional years because they "sought to circumvent their exclusions from Government contracting by creating SupplySync and conducting business with the Government through it instead." AR372.

On September 20, 2023, Jian submitted a letter responding to the second NPD, in which he largely discussed his background, the stress of the debarment, and subsequent remedial measures he implemented after his debarment to improve Paragon's quality control issues; however, the letter did not refute, or even discuss, his alleged affiliation with Patashka or his alleged control over SupplySync. *See* AR395. Patashka, Paragon, and SupplySync did not respond to the NPDs. *See* AR539.

On November 6, 2023, after considering Jian's letter, the SDO found that three-year debarments of SupplySync and Patashka were appropriate as they were not "present[ly] responsible" and that a three-year extension of Paragon and Jian's debarments was necessary to protect the government, given their "attempt[s] to circumvent their exclusions from Government contracting by means of their affiliates." AR539-40. In this same letter, the SDO also denied Jian's July 19, 2023 request to reduce his and Paragon's debarment term from three years. AR539.

---

[2] Specifically, Patashka submitted 147 quotes on behalf of Paragon and 25 quotes on behalf of SupplySync. *Id.*
[3] A DIBBS account is an internet platform that allows users to compete for DLA contracts and purchase orders. AR368.

Currently, Jian and Paragon's debarments expire on February 27, 2029, and Patashka and SupplySync's debarments expire on August 29, 2026. AR551.

On February 16, 2024, Plaintiffs, through counsel, submitted a request for early termination of their debarments. AR543. Focusing exclusively on the allegations set forth in the second NPD, Plaintiffs argued that DLA had not demonstrated by a preponderance of the evidence that Jian controlled Patashka, claiming that the only evidence DLA has of their "control" is merely that they reside in close proximity to each other. AR544. *See* AR543-50. There was no new evidence submitted with this reconsideration request pertaining to their relationship; nor did they specifically deny or refute the affiliation that the SDO found. *See generally id.* On March 26, 2024, the SDO denied this request. AR551.

On July 17, 2024, Plaintiffs filed this action. *See* [Doc. No. 1].

## II. STANDARD OF REVIEW

A. Arbitrary and Capricious Review

Under the APA, courts do not engage in *de novo* review of agency decisions, but rather, apply the "arbitrary and capricious" standard and only set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). These "criteria render our oversight highly deferential, with a presumption in favor of finding the agency action valid." *Friends of Back Bay v. U.S. Army Corps of Eng'rs*, 681 F.3d 581, 587 (4th Cir. 2012) (internal quotation marks omitted). Review under the "arbitrary and capricious" standard is narrow, and "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). At bottom, the agency must "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines, Inc. v. United*

*States*, 371 U.S. 156, 168 (1962)). Thus, the Court reviews only "whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 263 (4th Cir. 2006) (internal quotation marks omitted); *see also Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) (quoting *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)). A court may find arbitrary and capricious action if the agency considers "factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs.*, 463 U.S. at 43. The reviewing court may "not supply a reasoned basis for the agency's action that the agency itself has not given," *id.* at 43; and a court must still uphold a decision of "less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp.*, 419 U.S. at 286.

### B. Summary Judgment

Under Rule 56(a), a court may grant summary judgment, after reviewing the record as a whole and in the light most favorable to the nonmoving party, it finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Tolan v. Cotton*, 572 U.S. 650, 655-57 (2014). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III. DISCUSSION

Debarment is the process of suspending an individual or entity from contracting with the federal government. Under the Federal Acquisition Regulation ("FAR"), a government contractor can be debarred for various reasons, such as a "history of failure to perform, or of unsatisfactory performance," or any action that "affects the present responsibility of the contractor." *See* 48 C.F.R. § 9.406-2(b)-(c). No showing of "willful" actions by the contractor is required, but rather, the agency can support its case for debarment by showing "[a] history of failure to perform, or of unsatisfactory performance of, one or more contracts." *Id.* § 9.406-2(b)(1)(i)(A)-(B).

The debarment process proceeds in three steps. First, the agency provides a notice of proposed debarment ("NPD") to the contractor informing it of the grounds for debarment and the contractor's right to present evidence or arguments contesting the matters. *Id.* § 9.406-3(c)(4). Second, after any response is submitted, the agency reviews that information. Finally, the agency will determine whether the contractor has shown by a preponderance of the evidence that it is presently responsible and debarment is not a necessary sanction. *Id.* § 9.406-1(a). In doing so, the agency considers ten mitigating factors. *See id.* § 9.406-1.

In support of their Motion, Plaintiffs contend that (1) the Small Business Administration ("SBA") has the exclusive authority to debar them and that the DLA and its SDO acted without any authority to debar them; (2) the applicable regulations require DLA to invoke various "contractual remedies" in response to the Plaintiffs' alleged breaches, rather than pursue debarment; and (3) DLA's first and second debarment decisions were arbitrary and capricious or were otherwise issued without complying with all requisite procedures. *See* [Doc. Nos. 20-1, 25]. In response to these positions, Defendants contend that (1) Plaintiffs have forfeited nearly all of the above arguments because they failed to press them at the agency level; (2) Plaintiffs cannot

show Defendants acted contrary to law in choosing to debar Plaintiffs rather than seek contract remedies; (3) both debarments were properly supported by the record and followed all applicable regulations; and (4) the Agency's denial of Plaintiffs' request for reconsideration without the submission of any new evidence is a nonreviewable agency action. [Doc. No. 22]; [Doc. No. 31].

### A. Plaintiffs did not raise certain now-relied upon objections in the Agency's proceedings and are now precluded from seeking relief based on those objections.

In an APA challenge, "orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts," and "courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. LA Tucker Truck Lines, Inc.*, 344 U.S. 33, 36-37 (1952). For this reason, issue exhaustion in administrative proceedings is required where the administrative decisions are made in situations similar to adversary litigation. *Sims v. Apfel*, 530 U.S. 103, 109-10 (2000); *see also Edd Potter Coal Co., Inc. v. Dir., Off. Of Workers' Comp. Programs*, 39 F.4th 202, 206 (4th Cir. 2022) ("Derived from more general issue-preservation principles, issue-exhaustion requirements foster fairness to administrators and litigants by putting them on notice of disputed issues. . . . Arguments made in initial administrative proceedings should not be treated as a rough draft, to be expanded whenever a new idea pops into a party's head.").

Plaintiffs' debarment proceedings required Plaintiffs to raise factual and legal arguments against their debarment. *See* [Doc. No. 22] at 14-15; *see also Sims*, 530 U.S. at 109. By their nature, these agency proceedings were adversarial in nature and similar to adversarial litigation. Accordingly, in this APA challenge to agency action, issue exhaustion is required. *See Hickey v. Chadick*, No. 2:08–CV–0824, 2010 WL 11484581, at *22 (S.D. Ohio Aug. 5, 2010). In support of their Motion, Plaintiffs rely upon numerous objections that were not raised in the Agency

9

proceedings,[4] *see generally* AR251-60, AR312-316, AR395-96, AR543-50, and therefore are waived and may not be relied in this appeal from their debarment. *See Edd Potter*, 39 F.4th at 206.

With respect to their objection based on the DLA's and the SDO's lack of authority to debar them, Plaintiffs contend that they did not need to raise or press these issues before the Agency because "[i]t doesn't matter what was argued below [at the agency], when the argument is that the agency had no legal authority in the first place." [Doc. No. 25] at 22. But both *LA Tucker* and *Ed Potter* establish that even where a litigant argues that the agency's decision is void due to either the agency's or the decisionmaker's lacking the authority to impose the decision in the first instance, these issues must be pressed at the agency level or else they are unreviewable by the district court. *See LA Tucker*, 344 U.S. at 35-37; *Edd Potter*, 39 F.4th at 207; *cf. Lee v. Berryhill*, No. 2:18cv214, 2018 WL 8576604, at *3 (E.D. Va. Dec. 20, 2018), *R&R adopted*, No. 2:18cv214, 2019 WL 1299366 (E.D. Va. Mar. 21, 2019) ("A challenge to the appointment of the Social Security Administrate Law Judge must be raised in the administrative proceedings in order to preserve it for judicial review.").

B. Plaintiffs have not shown that the Defendants acted contrary to law.

Even if Plaintiffs had not waived the above arguments, they nevertheless fail on their merits and do not establish that Defendants acted contrary to law.

1. Both DLA and the SDO had the authority to debar Plaintiffs.

First, Plaintiffs argue that SDO Lightner lacked the authority to debar Plaintiffs. [Doc. No. 25] at 5-6. 48 C.F.R. § 2.101 authorizes that a suspending or debarring official can be either "any

---

[4] These objections are addressed *infra*, *see* Section II.B, and include that (1) DLA is not authorized to debar small business federal contractors; (2) DLA did not properly authorize the SDO to debar Plaintiffs; (3) Plaintiffs' conduct needed to be willful; (3) Plaintiffs were entitled to notice and an opportunity to cure; (4) Plaintiffs had the right to unlimited contract cancellations; (5) debarment was improper given Plaintiffs' prior satisfactory performance; (6) Defendants should have followed certain inspection requirements and were required to seek repair or replacement of the goods at issue; and (7) Defendants waived any issues now relied on for debarment because they actually accepted the goods at issue. [Doc. No. 25] at 12-18.

agency head" or "[a] designee authorized by the agency head to impose a suspension and/or a debarment." As set forth in the government's opposition, DLA's Director, Mark T. Simerly, an "agency head," delegated his authority to debar or suspend contracts to DLA's General Counsel, who was also authorized to "redelegate this authority within the DLA Office of General Counsel." [Doc. No. 31-1] at 3. The General Counsel then, pursuant to the authority delegated to him by the agency head, redelegated his debarment and suspension authority to the Deputy General Counsel, SDO Lightner, who served as the SDO for Plaintiffs' debarments. [Doc. No. 31-1] at 4. As a result, SDO Lightner was "a designee authorized by the agency head to impose a suspension and/or a debarment." 48 C.F.R. § 2.101.

Second, Plaintiffs argue that the SBA is the only agency that can debar Plaintiffs because Paragon and SupplySync are small businesses, and only the SBA can determine contractor responsibility under the Small Business Act ("SBA"), [Doc. No. 20-1] at 9-10, relying primarily on U.S.C. § 637(b)(7)(A) to contend that decisions pertaining to the "responsibility" of small business contractors rest in the exclusive purview of the SBA:

> To certify to Government procurement officers, and officers engaged in the sale and disposal of Federal property, with respect to all elements of *responsibility*, including, but not limited to, capability, competency, capacity, credit, integrity, perseverance, and tenacity, of any small business concern or group of such concerns to receive and perform a specific Government contract. A Government procurement officer or an officer engaged in the sale and disposal of Federal property may not, for any reason specified in the preceding sentence preclude any small business concern or group of such concerns from being awarded such contract without referring the matter for a final disposition to the Administration.

*Id.* (emphasis added).

Based on Section 637(b)(7)(A), the SBA may issue a certificate of competency "stating that the [contractor] is responsible . . . *for the purpose of receiving and performing a specific Government contract.* 48 C.F.R. § 19.601(a) (emphasis added). However, this SBA certification

11

"does not extend to questions concerning regulatory requirements imposed and enforced by other Federal agencies." *Id.* § 19.601(b). And while a finding of responsibility in a certificate of competency is conclusive and must be accepted by a contracting officer at the time the contract is awarded, [Doc. No. 31-3] at 3; *see also* 15 U.S.C. § 637(b)(7)(A) ("A Government procurement officer . . . may not . . . preclude any small business concern or group of such concerns *from being awarded such contract* without referring the matter for a final disposition to the Administration."), nothing in Section 637(b)(7)(A) or the SBA limits another agency from later debarring a small business based on a finding that the small business contractor is no longer responsible to continue in federal contracting.[5] In sum, although the SBA issues certificates of competency "for the purpose of receiving and performing a specific Government contract," that certification does not preclude other federal agencies from making subsequent responsibility determinations for the purposes of debarment based on a small business contractor's contract performance. Accordingly, even if these authority issues were preserved for review, the DLA did not act without authority or contrary to law when it debarred Plaintiffs.

>   *2. Defendants did not violate applicable regulations and procedures in debarring Plaintiffs.*

Nor did the DLA act contrary to law by violating applicable regulations and procedures, as the Plaintiffs also contend. First, Plaintiffs argue that because the DIBBS system permits a contractor to cancel an unlimited number of contracts and the government may terminate contracts at its convenience pursuant to 48 C.F.R. § 49.502, government contractors may not be debarred

---

[5] Although not part of the AR, the SBA itself agrees that nothing limits the debarment of small businesses by agencies other than the SBA. In that regard, the current Deputy General Counsel and the Associate General Counsel for Procurement Law at the SBA, who also serves as SBA's SDO for the purpose of debarment actions under the FAR, has filed in this action as part of the summary judgment record a declaration in which he states that "[t]he Small Business Act does not divest government agencies other than SBA of authority to debar contractors pursuant to the FAR. Nothing within the FAR limits debarment of small businesses to the sole purview of SBA. It is not uncommon for agencies other than SBA to debar small businesses under FAR." [Doc. No. 31-3] ¶ 5.

12

for cancelling already-awarded contracts, and for this reason, debarring Plaintiffs based on the number of contract termination was improper. *See* [Doc. No. 20-1] 8-9. In that regard, Plaintiffs contend that if the government takes issue with the number of contract cancellations, the government's proper recourse is limited to giving a negative review in the Contractor Performance Assessment Reporting System ("CPARS") system pursuant to 48 C.F.R. § 42.1503. *See* [Doc. No. 20-1] at 9. Notably, however, neither the CPARS regulations nor the debarment regulations require that all performance issues be documented within the CPARS process prior to initiating the debarment process. Instead, debarment may be pursued where there is a cause for it in the FAR § 9.406-3, and the SDO determines that it is in the government's interest to do so and weighs the relevant mitigating factors pursuant to Section 406.1. In any event, whatever rights Plaintiffs may have had with respect to the cancellation of contracts, the Court cannot identify any basis from which to conclude that the DLA was limited to recording what it regarded as performance issues in a contractor's CPARS file and not pursue debarment when it deemed performance issues reflected in cancellations sufficiently serious to warrant debarment. Nor was recording any performance issues in the Plaintiffs' CPARS file a prerequisite to instituting debarment proceedings.

Similarly, Plaintiffs contend that because the government has warranty rights under 48 C.F.R. § 52.246-18 that the government could have exercised in lieu of pursuing debarment, it was improper for them to debar Plaintiffs rather than enforce their warranty rights. But the relied upon regulations do not require the government to pursue these warranty rights in lieu of, or before, seeking debarment.

Likewise without merit is Plaintiffs' contention that debarment was not permissible given the government's asserted failure failed to inspect goods within a reasonable time after they were

delivered, and thereby arguably accepted Plaintiffs' nonconforming parts. [Doc. No. 20-1] at 10-11. As an initial matter, the record does not establish that the government did not complete its investigations within a reasonable time.[6] In any event, a contractor "*shall* tender for acceptance only those items that conform to the requirements of this contract," and the government only "*reserves the right* to inspect or test any supplies or services that have been tendered for acceptance" and if it performs such an inspection, it "may require repair or replacement of nonconforming supplies." 48 C.F.R. § 52.213-4(d) (emphasis added). And although the government "shall accept or reject supplies as promptly as practicable after delivery," any inability to do so "*shall not relieve the Contractor of responsibility*, nor impose liability on the Government, for nonconforming supplies." 48 C.F.R. § 52.246-2(j) (emphasis added).[7] Nothing in these rights, obligations and the options available to the government can be reasonably understood to limit the government's ability to seek debarment based on the contractor's delivering nonconforming goods. Nor is DLA limited, as Plaintiffs contend, to its right to cancel a contract based on non-conformities.

In sum, Plaintiffs have not demonstrated that Defendants acted contrary to law in pursuing debarment of Plaintiffs rather than seeking contract remedies that may have been available to them. At bottom, DLA could have pursued available contract remedies, but it also was within its rights to pursue debarment without first pursuing any contract remedies.

---

[6] For example, with respect to one of the nonconforming parts, DLA issued the purchase order to Paragon on November 18, 2021, AR77, and at some unstated date thereafter, Paragon sent those parts to DLA to fulfil the contract requirements. On May 22, 2022, DLA's product test center ran a test on the equipment, AR98, and DLA notified Paragon of the failed test results on September 20, 2022. AR96. Accordingly, the AR does not disclose how long DLA had within its possession the non-conforming parts before it began its inspection, although the AR does reflect that the completion of testing with notification to Paragon of the non-conformity took less than four months.

[7] Plaintiffs also argued that 48 C.F.R. § 8.406-2 required the government to inspect the supplies in a timely manner; however, this provision only applies to orders conducted under the General Services Agency's Federal Supply Schedule, which is not at issue with these contracts. Further, Plaintiffs also rely on *In re White Tiger Graphics, Inc.*, Dep't of Veterans Affs. Bd. of Cont. Apps. slip op., 05-2 BCA ¶ 33,016 (Jun. 22, 2005), which considered the validity of the government's default termination of a contract, which is not at issue in this case.

### C. Jian and Paragon's debarments are not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

What remains to be decided is "whether the agency has committed a clear error of judgment" in deciding to debar Jian and Paragon based on the record before it. *See Holly Hill Farm*, 447 F.3d at 263. In making the decision to debar Jian and Paragon, DLA relied primarily on the (i) 43% contract cancellation rate and (ii) 71% nonconforming parts sampling. AR3-4. In their Opposition to the NPD, Paragon and Jian did not dispute the accuracy of these statistics or contest these findings; instead, they merely promised to implement remedial measures to improve its quality control processes. *See* AR251-60. However, the SDO found that these promised remedial measures were speculative and not yet implemented, and therefore, the SDO was unconvinced that they showed Jian and Paragon should not be debarred, when weighing the ten applicable factors.[8] AR305-08. In that regard, the SDO considered the need for DLA to procure items without defects or nonconformities to adequately support the DOD and other governmental agencies, and for contractors to fulfill contract requirements. AR2. The SDO also considered that even a limited review of Paragon and Jian's supplies to the government showed that the defects were more abundant than not, even in mission critical items. *See* AR4. Here, Paragon and Jian admitted that its quality control processes "has been lacking and in need of improvements," AR252, and did not otherwise dispute the facts underlying the NPD.[9] Based on the entire administrative record, the

---

[8] Plaintiffs argued at the hearing that in violation of DLA's Directive, 9.406-90 (dated April 5, 2024) the SDO failed to consider that they had already implemented corrective actions. However, the AR reflects that the SDO did consider what was offered as mitigating information but determined that it did not demonstrate Plaintiffs' present responsibility by a preponderance of the evidence and emphasized that the SDO believed the proposed corrective actions would not permit Plaintiffs' to successfully perform in the future. *See* AR305-08. At the hearing, Plaintiffs also argued that DLA improperly omitted a detailed account of Plaintiffs' relevant performance history and that they had no notice of their alleged noncompliance with the contract until the NPD was issued. This claim was not made in opposition to the NPD, and the AR does not reflect whether and when Plaintiffs were first notified of contract performance issues, although Defendants did submit in this action an unchallenged declaration that before the issuance of the NPD Plaintiffs were on notice of issues that stemmed from their use of the Turkish suppliers from whom they obtained the non-conforming parts, who lacked a Joint Certification Program certification. *See* [Doc. No. 22-1] ¶¶ 7-12.

[9] Before DLA issues a NPD, a contracting officer must ask the Office of General Counsel for a referral memorandum which sets forth whether the contractor's nonperformance is sufficiently serious to serve as grounds for potential

15

Court cannot find that the Agency committed a clear error of judgment in debarring Jian and Paragon based on the undisputed facts before it.

> D. Patashka and SupplySync's debarments, and Paragon and Jian's extensions of the debarment terms, are not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

With respect to Patashka and SupplySync's debarments, and Jian and Paragon's three-year debarment extension, DLA also "articulate[s] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs.*, 463 U.S. at 43 (quoting *Burlington Truck Lines*, 371 U.S. at 168). "Business concerns, organizations, or individuals are affiliates of each other if, directly or indirectly, (1) either one controls or has the power to control the other, or (2) a third party controls or has the power to control both." 48 C.F.R. § 403. Indicia of control is often found where "interlocking management or ownership, identity of interests among family members, shared facilities and equipment, [and] common use of employees." *Id.*

In the NPD, the SDO relied on various facts to find Jian and Paragon's control over Patashka and SupplySync, including, perhaps most probative, that Patashka submitted the twenty-five quotes on behalf of SupplySync from the same IP address as the 147 quotes Patashka submitted on behalf of Paragon, in addition to (i) Patashka's telephone numbers being registered to Jian; (ii) Jian and Patashka residing at the same address; (iii) Patashka being the registered user for DLA's DIBBS account for both Paragon and SupplySync; and (iv) the IP address used by Patashka geolocates to Sterling, Virginia, where Jian and Patashka reside. AR368. Nor did

---

debarment. F.A.R. § 9.406-90(b). At the hearing on the Motion, Plaintiffs argued that because the DLA's Office of Counsel's referral memorandum was not part of the Administrative record, *see* [Doc. No. 20-1] at 19; [Doc. No. 26] at 12, 17 n.19, 18 n.22, the Court should draw an adverse inference and assume that the information in the referral memorandum would support Plaintiffs' position. However, Magistrate Judge Davis has already ruled that this referral memorandum was properly excluded from the AR, [Doc. No. 46], and the Court finds no basis upon which to draw the requested adverse inference.

Paragon, Patashka, or SupplySync file in opposition to the NPD any records or evidence to demonstrate that they were not affiliates. Similarly, Jian did not discuss or dispute his affiliation with Patashka or his alleged control over SupplySync in the letter Jian submitted after the second NPD was issued. *See* AR395. To date, Plaintiffs have not affirmatively denied that they do not have the an affiliation or explained how Patashka could submit contract bids on Paragon's behalf and SupplySync's behalf in close temporal proximity without the affiliation that the SDO found. When combining the evidence of affiliation and the lack of evidence to the contrary, the SDO had sufficient information upon which to find that Jian and Paragon exerted the required control over Patashka and SupplySync. Based on that affiliation, the SDO also determined that because Paragon and Jian sought to circumvent their debarments by using Patashka and SupplySync to obtain government contracts, Jian and Paragon were not entitled to have their three-year debarment term reduced, even though they submitted new evidence which showed that Paragon and Jian implemented various remedial measures to improve their quality control practices. *See* AR 312-364, AR539.

Based on the entirety of the administrative record, the Court does not find that DLA's decision to debar Patashka and SupplySync, or the three-year extension of Jian's and Paragon's debarments, were arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.[10]

---

[10] After the decisions on the second NPDs were issued, Plaintiffs submitted another request for reconsideration but did not submit any new evidence or materials in support of this request. *See* JA543-51. Accordingly, this Court lacks jurisdiction to review this request for reconsideration. *See I.C.C. v. B'hood of Locomotive Eng'rs*, 482 U.S. 270, 280 (1987) ("[W]here a party petitions an agency for reconsideration on the ground of 'material error,' i.e., on the same record that was before the agency when it rendered its original decision, an order which merely denies rehearing of the prior order is not itself reviewable." (cleaned up)).

## IV. CONCLUSION

Accordingly, for the reasons set forth above, there are no genuine issues of material fact, and Defendants are entitled to judgment in their favor as a matter of law. Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion, [Doc. No. 20], be, and the same hereby is, **DENIED**; and it is further

**ORDERED** that Defendants' Motion, [Doc. No. 21], be, and the same hereby is, **GRANTED**, and judgment be entered it its favor and against the Plaintiffs.

The Clerk is directed, pursuant to Federal Rule of Civil Procedure 58, to enter final judgment in favor of Defendants, and to send a copy of this Memorandum Opinion and Order to all counsel of record.

August 20, 2025
Alexandria, Virginia

Anthony J. Trenga
Senior U.S. District Judge